Ellen M. Mahan
Deputy Section Chief
Deborah A. Gitin
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
450 Golden Gate Avenue, Room 7-6714
San Francisco, California  94102
(CA Bar # 284947)
Telephone: (415) 744-6488
Facsimile: (415) 744-6476
Email:  deborah.gitin@usdoj.gov

*Attorneys for the United States of America*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Apache Nitrogen Products, Inc., an Arizona corporation,<br><br>　　　　Defendant. | COMPLAINT |

1

COMPLAINT
*United States of America v. Apache Nitrogen Products, Inc.* (D. Ariz.)

1         Plaintiff, the United States of America ("United States"), by the authority of the

2 Attorney General, through its undersigned attorneys, and at the request of the

3 Administrator of the United States Environmental Protection Agency ("EPA"), hereby

4 alleges:

5 **I.**      **PRELIMINARY STATEMENT**

6       1.     This is a civil action for penalties and injunctive relief brought pursuant to

7 Section 113(b)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b)(2); Section 325 of

8 the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C.

9 § 11045; and Section 109(c) of the Comprehensive Environmental Response,

10 Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9609(c), against Defendant,

11 Apache Nitrogen Products, Inc. ("Defendant" or "Apache Nitrogen").

12       2.     The United States alleges violations of Sections 112(r)(1) and 112(r)(7) of

13 the CAA, 42 U.S.C. §§ 7412(r)(1), 7412(r)(7), at the nitrogen-based chemical products

14 manufacturing facility Defendant owns and operates in St. David, Cochise County,

15 Arizona ("the Facility").

16       3.     The United States alleges a violation of the emergency release notification

17 requirements of Section 103 of CERCLA, 42 U.S.C. § 9603, at the Facility.

18       4.     The United States alleges violations of the emergency release notification

19 requirements of Section 304 of EPCRA, 42 U.S.C. § 11004, at the Facility.

20 **II.**     **JURISDICTION AND VENUE**

21       5.     This Court has jurisdiction over the subject matter of this action pursuant to

22 Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Section 109(c) of CERCLA, 42 U.S.C.

23 § 9609(c); Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3); and 28 U.S.C. §§ 1331,

24 1345, and 1355.

25       6.     Venue is proper in this judicial district pursuant to Section 113(b) of the

26 CAA, 42 U.S.C. § 7413(b); Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); Section

27 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3); and 28 U.S.C. §§ 1391(b), 1391(c),

28 1391(d), and 1395(a), because Defendant's principal place of business is located in this

judicial district and the violations alleged occurred at the Facility located within this judicial district.

7.    The United States has notified the State of Arizona of the commencement of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## III.    THE DEFENDANT

8.    Apache Nitrogen is a corporation with its principal place of business at 1436 S. Apache Powder Road, St. David, Cochise County, Arizona.

9.    Apache Nitrogen owns and operates the Facility, a nitrogen-based chemical products manufacturing facility, at 1436 S. Apache Powder Road, St. David, in Cochise County.  At the Facility, Apache Nitrogen manufactures nitric acid, prilled ammonium nitrate, liquid ammonium nitrate, and various substances used as fertilizers.

10.    Apache Nitrogen is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e); Section 101(21) of CERCLA, 42 U.S.C. § 9601(21); and Section 329(7) of EPCRA, 42 U.S.C. § 11049(7).

## IV.    STATUTORY AND REGULATORY FRAMEWORK

### A.    Clean Air Act (CAA)

11.    In 1990, Congress added Section 112(r) to the Clean Air Act, *see* Pub. L. 101-549 (Nov. 15, 1990) (42 U.S.C. § 7412), in response to a 1984 catastrophic release of an extremely hazardous substance in Bhopal, India that killed more than 3,400 people, caused over 200,000 to suffer injuries, and caused damage to crops and livestock. S. Rep. 101-228 (Dec. 20, 1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3519.

12.    The objective of Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and its implementing regulations, is "to prevent the accidental release and to minimize the consequences of any such release" of any substance listed pursuant to Section 112(r)(3) ("regulated substance") or any other extremely hazardous substance.  42 U.S.C. § 7412(r)(1).

13.     Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), includes a "General Duty Clause" that places the responsibility to design and maintain a safe facility on the owner or operator of the facility.

14.     The General Duty Clause applies to owners and operators of stationary sources that produce, process, handle, or store specific hazardous substances.  In pertinent part, Section 112(r)(1) provides:

> It shall be the objective of the regulations and programs authorized under this subsection to prevent the accidental release and to minimize the consequences of any such release of any substance listed pursuant to paragraph (3) or any other extremely hazardous substance.  The owners and operators of stationary sources producing, processing, handling or storing such substances have a general duty in the same manner and to the same extent as Section 654 of Title 29 [29 U.S.C. § 654] to identify hazards which may result from such releases using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur.

42 U.S.C. § 7412(r)(1) (hereinafter "General Duty Clause").

15.     Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), authorizes EPA to promulgate release prevention, detection, and correction requirements to prevent accidental releases of "regulated substances," and requires a prompt emergency response to any such releases in order to protect human health and the environment.  On June 20, 1996 (61 Fed. Reg. 31668), EPA promulgated regulations to implement Section 112(r)(7), codified at 40 C.F.R. Part 68 and known as the Risk Management Program regulations ("RMP Regulations"), which apply to the owners and operators of stationary sources that have more than a threshold quantity of a regulated substance in a "process." *See* 40 C.F.R. § 68.10.

16.     Section 112(r)(2)(B) of the CAA, 42 U.S.C. § 7412(r)(2)(B), defines "regulated substance" as a substance listed by EPA under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3); the listed substances are those "which, in the case of an accidental release, are known to cause or may reasonably be anticipated to cause death,

injury, or serious adverse effects to human health or the environment." *Id*.   Pursuant to Section 112(r)(3), 42 U.S.C. § 7412(r)(3), EPA promulgated a list of "regulated substances."  *See* 40 C.F.R. § 68.130.

17.     An "extremely hazardous substance" ("EHS"), as the term is used in Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), is any chemical which may, as a result of short-term exposures because of releases to the air, cause death, injury, or property damage due to its toxicity, reactivity, flammability, volatility, or corrosivity. S. Rep.  101-228, 101st Cong., 1st Sess. (1989).  EHSs include, but are not limited to, regulated substances listed by EPA at 40 C.F.R. § 68.130 pursuant to 42 U.S.C. § 7412(r)(3), and chemicals on the list of EHSs published under Section 302 of EPCRA, 42 U.S.C. § 11002, at 40 C.F.R. Part 355, Appendices A and B.

18.     Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C), defines a "stationary source" as "any buildings, structures, equipment, installations or substance emitting stationary activities" which belong to the same industrial group, are located on one or more contiguous properties, are under the control of the same person, and from which an accidental release may occur.

19.     Section 112(r)(2)(A), 42 U.S.C. § 7412(r)(2)(A), defines "accidental release" as an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source.

20.     40 C.F.R. § 68.3 defines "owner or operator" as "any person who owns, leases, operates, controls, or supervises a stationary source."  Section 302(e) of the CAA defines "person" to include, *inter alia*, corporations.  42 U.S.C. § 7602(e).

21.     40 C.F.R. § 68.3 defines "process"  to mean "any activity involving a regulated substance including any use, storage, manufacturing, handling, or on-site movement of such substances, or combination of these activities," and defines "covered process" to mean "a process that has a regulated substance present in more than a threshold quantity as determined under [40 C.F.R.] § 68.115."

22.     The regulations at 40 C.F.R. Part 68 separate covered processes into three categories, designated as Program 1, Program 2, and Program 3, and set forth specific requirements for owners and operators of stationary sources with processes that fall within the respective programs.

23.     Pursuant to 40 C.F.R. § 68.10(h), a covered process is subject to Program 3 requirements if it does not meet one or more of the Program 1 eligibility requirements set forth in 40 C.F.R. § 68.10(f) and it is either (1) listed in one of the specific North American Industry Classification System codes found in 40 C.F.R. § 68.10(h)(1); or (2) is subject to the United States Occupational Safety and Health Administration ("OSHA") process safety management standard set forth in 29 C.F.R. § 1910.119.

24.     Pursuant to 40 C.F.R. § 68.12(a) & (d), the owner or operator of a stationary source with a process subject to Program 3 prevention requirements must undertake certain tasks, including but not limited to:

    a.     Establishing and implementing a management system, as provided in 40 C.F.R. § 68.15, and documenting the organization of that management system;

    b.     Performing a process hazard analysis ("PHA") on all Program 3 processes, and promptly addressing PHA findings and recommendations, as provided in 40 C.F.R. § 68.67(a)-(e);

    c.     Documenting that equipment complies with recognized and generally accepted good engineering practices ("RAGAGEP"), as provided in 40 C.F.R. § 68.65(d)(2);

    d.     Establishing a system to promptly address findings and recommendations made in a PHA in a timely manner and documenting the resolution, as provide in 40 C.F.R. § 68.67(e);

    e.     Establishing and implementing a mechanical integrity program, as provided in 40 C.F.R. § 68.73(b) & (d);

    f.     Correcting deficiencies in equipment in a safe and timely manner, as provided in 40 C.F.R. § 68.73(e);

g.    Establishing and implementing an emergency response program as provided in 40 C.F.R. §§ 68.90 and 68.95, including processes for informing the public about accidental releases, testing emergency response equipment, and training employees in emergency response procedures;

h.    Conducting certified compliance audits and promptly responding to the findings of compliance audits, as provided in 40 C.F.R. § 68.79(a) & (d);

i.    Ensuring the completeness and accuracy of process safety information, as provided in 40 C.F.R. § 68.65(a) & (d);

j.    Developing and implementing clear written operating instructions, as provided in 40 C.F.R. § 68.69(a);

k.    Updating five-year accident history to include accidental releases, as provided in 40 C.F.R. §§ 68.195(a) and 68.168; and

l.    Certifying operating procedures annually, as provided in 40 C.F.R. § 68.69.

25.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the United States may commence a civil action against any person that is the owner or operator of a covered source, to obtain civil penalties and a permanent or temporary injunction, whenever such person violated or is violating any requirement or prohibition of the CAA, including the requirements of Section 112(r)(1), 42 U.S.C. § 7412(r)(1); and Section 112(r)(7), 42 U.S.C. § 7412(r)(7), and its implementing regulations, 40 C.F.R. Part 68.

26.    Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as modified by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, and as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, establishes maximum civil penalties for violations of the CAA.  Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for an assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(1) and for each violation of Section 112(r)(7) of the CAA that occurred after January 12, 2009 but

7

COMPLAINT
*United States of America vs. Apache Nitrogen Products Inc.* (D. Ariz.)

no later than November 2, 2015, and $99,681 per day, per violation, for each violation that occurred after November 2, 2015.

**B.      Emergency Planning and Community Right-to-Know Act (EPCRA) and Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)**

27.      Section 304 of EPCRA, 42 U.S.C. § 11004, and the regulations set forth at 40 C.F.R. § 355.40 require the owner or operator of a facility at which a hazardous chemical is produced, used, or stored to notify certain government authorities when there is a release equal to or greater than the reportable quantity of any extremely hazardous substance listed by EPA pursuant to Section 302(a) of EPCRA, 42 U.S.C. § 11002(a). *See* 40 C.F.R. § 355, app. A (list of extremely hazardous substances).

28.      Specifically, Section 304(b) of EPCRA requires that the owner and operator immediately notify the State Emergency Response Commission ("SERC") of any state likely to be affected by the release, and the emergency coordinator for the Local Emergency Planning Committee ("LEPC") for any area likely to be affected by the release.

29.      Section 325(b)(3) of EPCRA provides, in pertinent part:

The Administrator may bring an action in the United States District court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation continues in the case of a violation of the requirements of section 11004 of this title.

42 U.S.C. § 11045(b)(3).

30.      Section 103(a) of CERCLA states that "[a]ny person in charge of . . . an onshore facility shall, as soon as he has knowledge of any release . . . of a hazardous substance [as defined in Section 102 of CERCLA, 42 U.S.C. § 9602] . . . in quantities equal to or greater than those determined pursuant to [Section 102 of CERCLA], immediately notify the National Response Center."  42 U.S.C. § 9603(a).

31.      Section 109(c) of CERCLA provides:

The President may bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000

per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) or 9603(b) of this title . . . . In the case of a second or subsequent violation (or failure or refusal), the amount of such penalty may be not more than $75,000 for each day during which the violation (or failure or refusal) continues.

42 U.S.C. § 9609(c).

32.     Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and Section 109 of CERCLA, 42 U.S.C. § 9609, as modified by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, and as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, establish maximum civil penalties for violations of the reporting requirements of Section 304 of EPCRA and Section 103 of CERCLA.  Pursuant to these authorities, Defendant is liable for an assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 304 of EPCRA, 42 U.S.C. § 11004, and for each violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), that occurred after January 12, 2009, but not later than November 2, 2015.

## V.     **DEFENDANT'S FACILITY**

33.     At all times relevant to this action, the Facility was a "stationary source" within the meaning of Section 112(r)(2)(C) of the CAA, 42 U.S.C. § 7412(r)(2)(C).

34.     At all times relevant to this action, the Facility was subject to the General Duty Clause of Section 112(r)(1) because it is a "stationary source" that produced, processed, handled, and/or stored one or more regulated substances listed under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), and/or other EHSs within the meaning of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1).

35.     At all times relevant to this action, the Facility processed, handled, and/or stored anhydrous ammonia, a regulated substance listed under Section 112(r)(3) of the CAA, 42 U.S.C. § 7412(r)(3), and at 40 C.F.R. § 68.130, above the thresholds set forth in 40 C.F.R. §§ 68.10 and 68.130, and used anhydrous ammonia in a "process" as defined by 40 C.F.R. § 68.3.

36.     Two processes within the Facility are subject to RMP Regulations applicable to "Program 3" facilities within the meaning of 40 C.F.R. §§ 68.10(h) and 68.12(d), because the Facility's NAICS Code 325311 is a Program 3-designated NAICS Code under 40 CFR § 68.10(h)(1), and because the processes are subject to the OSHA process safety management standard, as the quantity of anhydrous ammonia the Facility has in each process exceeds the threshold quantity of 10,000 pounds under OSHA's process safety management regulations.

37.     The Facility is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and also a "facility" within the meaning of Section 329(4) of EPCRA, 42 U.S.C. § 11049(4).

38.     At all times relevant to this action, Defendant has been and continues to be an owner and/or operator of the Facility within the meaning of Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9).

39.     At all times relevant to this action, Defendant has been and continues to be the "person in charge" of the Facility within the meaning of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), and its implementing regulations found at 40 C.F.R. § 302.6.

40.     At all times relevant to this action, Defendant has been and continues to be an "owner or operator" of the Facility within the meaning of Section 304 of EPCRA, 42 U.S.C. § 11004, and its implementing regulations found at 40 C.F.R. § 355.33.

VI.     **GENERAL ALLEGATIONS**

41.     On June 10, 2014, at approximately 10:08 a.m., there was a release of 52,000 pounds of anhydrous ammonia at the Facility.  On that date, Apache Nitrogen was offloading ammonia from a railcar when a sight glass in the ammonia piping broke, resulting in the release described above.

42.     The release described in Paragraph 41 led to the injuries of twelve Apache Nitrogen employees and one contractor, and resulted in the evacuation of some employees.

43.     On August 3, 2015, at approximately 12:40 p.m., there was a release of between 168 and 1150 pounds of anhydrous ammonia at the Facility.  Anhydrous ammonia is a listed hazardous substance pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602, and Section 302 of EPCRA, 42 U.S.C. § 11002, with a reportable quantity of 100 pounds.  40 C.F.R. § 302.4 (CERCLA implementing regulations); 40 C.F.R. § 355, app. A (EPCRA implementing regulations.).

44.     The release described in Paragraph 43 resulted in the evacuation of some Apache Nitrogen employees.

45.     Apache Nitrogen was aware of the release described in Paragraph 43 at the time of the release.  At least 3.25 hours passed after the release before Apache Nitrogen notified the National Response Center, the LEPC, or the SERC, at approximately 4:05 p.m.

46.     Following the incident described in Paragraph 41, EPA began an investigation of Defendant's implementation of Section 112(r) of the CAA, Section 103 of CERCLA, and Sections 302 through 312 of EPCRA at the Facility.  This investigation included but was not limited to an inspection of the Facility on May 25, 2015, and a follow-up inspection on September 29, 2017.

47.     Based on the investigation described in Paragraph 46, EPA issued a Notice of Inspection Findings and Request for Information to Defendant on March 9, 2016, and an additional Notice of Inspection Findings and Request for Additional Information on July 23, 2018, regarding the Facility.

## VII.     FIRST CLAIM FOR RELIEF
### Failure to Adequately Implement a Risk Management Program as Required by Applicable RMP Regulations, 40 C.F.R. Part 68, at the Facility

48.     Paragraphs 1 through 47 are incorporated herein by reference.

49.     Defendant is subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and the RMP Regulations promulgated thereunder at 40 C.F.R. Part 68, and specifically those regulations applicable to Program 3 processes, with respect

to the Facility, because it is the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process. The Risk Management Plan submitted by the Facility identifies and describes two such processes: the Ammonium Nitrate process (also known as the Anhydrous Ammonia process), and the Magazine and Curtis Yard process. The Risk Management Plan reports that the Ammonium Nitrate process may contain a quantity of up to 5,700,000 pounds of anhydrous ammonia at any one time, and that the Magazine and Curtis Yard process may contain a quantity of up to 5,500,000 pounds of anhydrous ammonia at any one time.

50.     As identified in the inspections of May 25, 2015 and/or September 29, 2017; and, upon information and belief, continuing for a period of time thereafter, and, for some of the failures listed below, continuing until the present day, Defendant failed to timely and adequately comply with the following RMP Regulations at the Facility:

a.     Failure to establish and implement an appropriate Management System to oversee implementation of a Risk Management Program, as required by 40 C.F.R. §§ 68.12 and 68.15, and to document the organization of that Management System (specifically, the failure to establish and implement an adequate Management System, and the failure to document the organization and staff responsibilities for the system that the Facility has);

b.     Failure to include all covered Program 3 processes in its process hazard analysis ("PHA"), as required by 40 C.F.R. § 68.67(a) (specifically, the failure to perform a PHA on the rail sidings where ammonia railcars are stored);

c.     Failure to document compliance with RAGAGEP, as required by 40 C.F.R. § 68.65(d)(2) (specifically, the failure to document compliance with RAGAGEP for (i) the use of sight glass assemblies in the ammonia railcar offloading process; (ii) appropriate labeling of piping in the railcar unloading area; (iii) adequate protection for "pull away while connected" incidents at truck and railcar unloading areas; and (iv) adequate impact protection for pipes against moving machinery or vehicular damage);

d.      Failure to establish a system to promptly address findings and recommendations made in a PHA in a timely manner and documenting the resolution, as provided in 40 C.F.R. § 68.67(e) (specifically, the failure to address the PHA recommendation to remove obsolete piping and the PHA recommendation to consider removing from service old ammonia tanks not in accordance with appropriate standards);

e.      Failure to adequately establish and implement its mechanical integrity program, as required by 40 C.F.R. § 68.73(b) & (d) (specifically, the failure to set and conduct mechanical integrity inspection and testing with the frequency Defendant had itself assigned for certain equipment, failure to set mechanical integrity inspection and testing with a frequency consistent with manufacturer's recommendations and good engineering practices for pressure relief valves, and failure to set inspection and testing frequency at all for certain process equipment);

f.      Failure to correct deficiencies in equipment in a safe and timely manner, as required by 40 C.F.R. § 68.73(e) (specifically, the failure to address external corrosion on piping);

g.      Failure to adequately establish and implement an emergency response program, as required by 40 C.F.R. §§ 68.90 and 68.95 (specifically, the failure to develop adequate procedures for informing the public about accidental releases and responding to accidental releases, the failure to develop procedures for the use, inspection, testing, and maintenance of emergency response equipment, and the failure to train employees in the use of emergency response equipment);

h.      Failure to certify compliance audits and to promptly respond to the findings of compliance audits, as required by 40 C.F.R. § 68.79(a) & (d) (specifically, the lapse of over five years in responding to certain compliance audit findings identified in 2011, and the failure to certify Defendant's 2014 compliance audit);

i.      Failure to ensure the completeness and accuracy of process safety information, as required by 40 C.F.R. § 68.65(a) & (d) (specifically, the failure to maintain information on certain electrical classifications, interlocks, or the design and

design basis for relief systems; and the failure to ensure the accuracy of certain piping and instrument diagrams);

        j.    Failure to develop and implement clear written operating instructions, as required by 40 C.F.R. § 68.69(a) (specifically, the failure to develop and implement clear and safe instructions for offloading liquid ammonia from railcars and associated activities);

        k.    Failure to update the Facility's five-year accident history to include accidental releases, as required by 40 C.F.R. §§ 68.195(a), 68.168, and 68.175(*l*) (specifically, the failure to timely update the Facility's accident history to include the June 10, 2014 release described in Paragraph 41); and

        l.    Failure to certify its operating procedures annually, as required by 40 C.F.R. § 68.69(c) (specifically, the failure to timely certify operating procedures, including AMM-0010, AMM 0121, and LAN-0015).

51.    Each instance of a failure by Defendant to comply with the RMP Regulations, 40 C.F.R. Part 68, at the Facility, as set forth in Paragraph 50.a-50.l. above, constitutes a violation of Section 112(r)(7) of the CAA.

52.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. § 19.4, Defendant is liable for injunctive relief and assessment of civil penalties of up to $37,500 per day, per violation, for each violation of Section 112(r)(7) of the CAA at the Facility that occurred after January 12, 2009 but no later than November 2, 2015, and $99,681 per day, per violation, for each such violation that occurred after November 2, 2015.

## VIII.   SECOND CLAIM FOR RELIEF
### Failure to Comply with the Requirements of the General Duty Clause of Section 112(r)(1) of the CAA at the Facility

53.    Paragraphs 1 through 52 are incorporated herein by reference.

54.    Pursuant to Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), Defendant is required "to identify hazards which may result from such releases

[accidental releases of extremely hazardous substances] using appropriate hazard assessment techniques, to design and maintain a safe facility taking such steps as are necessary to prevent releases, and to minimize the consequences of accidental releases which do occur."

55.     Ammonium nitrate, a granular solid, is a strong oxidizer and is highly reactive.  Ammonium nitrate may undergo detonation if subjected to strong shocks.  As an oxidizer, ammonium nitrate may increase the flammability and/or explosiveness of other substances, increasing the fire hazard and complicating the firefighting challenges.

56.     Ammonium nitrate is an EHS, as that term is used in Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), and as further described in Paragraph 17 above, because ammonium nitrate is a chemical which may, as a result of short-term exposures because of releases to the air, cause death, injury, or property damage due to its toxicity, reactivity, flammability, volatility, or corrosivity.

57.     As identified in the inspection of May 25, 2015, and, upon information and belief, continuing for a period of time thereafter, Defendant failed to design and maintain a safe facility by taking such steps as necessary to prevent accidental releases of a regulated substance, specifically, by allowing unsafe design and/or maintenance of equipment in its liquid ammonium nitrate unit.

58.     EPA observed at the May 25, 2015 inspection that there was a large accumulation of solid ammonium nitrate on the side of the vessel described in Paragraph 57; that the accumulation of ammonium nitrate was approximately thirty feet above ground; and that large pieces of ammonium nitrate had fallen onto piping and the ground below.

59.     According to Defendant's own records, Defendant had been aware of the deficiency and the need to correct it since at least November 19, 2014.  On that date, Defendant issued a work order identifying a leak in the liquid ammonium nitrate unit and the need to repair it.  However, at the May 25, 2015 inspection, EPA personnel observed the accumulation of solid ammonium nitrate described above at Paragraph 58; EPA

1    personnel also observed that Defendant had attached tape reading "CAUTION" to

2    surround the ammonium nitrate debris.

3          60.    Feasible means existed by which Defendant could have addressed the

4    issues set forth in Paragraphs 58 and 59 above, and maintained a safe facility at the liquid

5    ammonium nitrate unit.

6          61.    Each instance of a failure by Defendant to design or maintain a safe facility

7    constitutes a violation of the General Duty Clause of Section 112(r)(1) of the CAA, 42

8    U.S.C. § 7412(r)(1).

9          62.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R.

10   § 19.4, Defendant is liable for assessment of civil penalties of up to $37,500 per day, per

11   violation, for each violation of Section 112(r)(1) of the CAA at the Facility that occurred

12   after January 12, 2009 but no later than November 2, 2015, and $99,681 per day, per

13   violation, for each such violation that occurred after November 2, 2015.

14   **IX.    THIRD CLAIM FOR RELIEF**
     **Failure to Make a Timely Notification of Release of a Hazardous Substance at**
15   **the Facility as Required by Section 103 of CERCLA**

16         63.    Paragraphs 1 through 52 are hereby incorporated by reference.

17         64.    Anhydrous ammonia is a listed hazardous substance with a reportable

18   quantity of 100 pounds.  40 C.F.R. § 302.4.

19         65.    The release of anhydrous ammonia from the Facility described in Paragraph

20   43 was above the reportable quantity.

21         66.    Apache Nitrogen was aware of the release described in Paragraph 43 at the

22   time of the releases.  However, Apache Nitrogen failed to notify the National Response

23   Center for over 3.25 hours after the release described in Paragraph 43, in violation of

24   Section 103(a) of CERCLA, 42 U.S.C. § 9603(a), which requires "immediate"

25   notification, and 40 C.F.R. § 302.6.

26         67.    Section 109(c) of CERCLA provides:

27   The President may bring an action in the United States district court for the
     appropriate district to assess and collect a penalty of not more than $25,000
28

per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) or (b) of this title . . . .

42 U.S.C. § 9609(c).

68.     Under the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, the $25,000 penalty has been increased to $37,500 a day for violations occurring after January 12, 2009 but not later than November 2, 2015.

69.     Defendant is liable for a penalty of $37,500 for its failure to timely notify the National Response Center on August 3, 2015 of the release of a hazardous substance above the reportable quantity at the Facility.

## X.     FOURTH CLAIM FOR RELIEF
### Failure to Make Timely Notifications of Release of a Hazardous Substance at the Facility as Required by Section 304 of EPCRA

70.     Paragraphs 1 through 52 and Paragraphs 63 through 69 are hereby incorporated by reference.

71.     For St. David, Arizona, the SERC is the Arizona Emergency Response Hotline, and the LEPC emergency coordinator is Cochise County Emergency Services.

72.     Anhydrous ammonia is a listed hazardous substance with a reportable quantity of 100 pounds.  40 C.F.R. § 302.4.

73.     The release of anhydrous ammonia from the Facility described in Paragraph 43 was above the reportable quantity.

74.     Apache Nitrogen was aware of the release described in Paragraph 43 at the time of the release.  However, Apache Nitrogen failed to notify the LEPC or SERC for over 3.25 hours after the release described in Paragraph 43, in violation of Section 304 of EPCRA, 42 U.S.C. § 11004, which requires "immediate" notification, and 40 C.F.R. § 355.33.

75.     Section 325(b)(3) of EPCRA provides, in pertinent part:

The Administrator may bring an action in the United States District court for the appropriate district to assess and collect a penalty of not more than

$25,000 per day for each day during which the violation continues in the case of a violation of the requirements of section 11004 of this title.

42 U.S.C. § 11045(b)(3).

76.     Under the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, as implemented by the Civil Monetary Penalties Inflation Rule, 40 C.F.R. Part 19, the $25,000 penalty has been increased to $37,500 a day for violations occurring after January 12, 2009 but not later than November 2, 2015.

77.     Defendant is liable for a penalty of $37,500 for its failure to timely notify the LEPC on August 3, 2015, and for a penalty of $37,500 for its failure to timely notify the SERC on August 3, 2015, of the release of a hazardous substance above the reportable quantity at the Facility.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

A.   Order Defendant to immediately comply with the Clean Air Act statutory and regulatory requirements cited in this Complaint, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b);

B.   Assess civil penalties against Defendant not to exceed $37,500 per day, per violation, for each violation of Section 112(r)(1) of the CAA, 42 U.S.C. § 7412(r)(1), and the RMP Regulations promulgated under Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), and codified at 40 C.F.R. Part 68, occurring on or before November 2, 2015, and not to exceed $99,681 per day, per violation, for each violation occurring after November 2, 2015;

C.   Assess a CERCLA civil penalty against Defendant not to exceed $37,500 for its failure to timely notify the National Response Center on August 3, 2015, of a release of a hazardous substance at the Facility;

D.   Assess an EPCRA civil penalty against Defendant not to exceed $37,500 for its

1    failure to timely notify the LEPC on August 3, 2015, of a release of a hazardous

2    substance at the Facility; and an EPCRA civil penalty against Defendant not to

3    exceed $37,500 per violation for its failure to timely notify the SERC on August 3,

4    2015, of a release of a hazardous substance at the Facility;

5    E.    Impose such injunctive relief on Defendant as may be appropriate to mitigate the

6    effects of Defendant's violations, and prevent any future violations of same;

7    F.    Award the United States its costs and expenses incurred in this action; and

8    G.    Grant such other relief and further relief as this Court may deem appropriate.

9

10                                  Respectfully submitted,

11                                  ELLEN M. MAHAN
12                                  Deputy Section Chief

13
     Dated: October 28, 2020        _____
14
                                    DEBORAH A. GITIN (CA Bar # 284947)
15                                  Senior Counsel
                                    Environmental Enforcement Section
16                                  Environment and Natural Resources Division
                                    U.S. Department of Justice
17                                  450 Golden Gate Avenue, Room 7-6714
                                    San Francisco, CA 94102
18                                  Telephone: (415) 744-6488
                                    Facsimile: (415) 744-6476
19                                  Email: deborah.gitin@usdoj.gov
20
                                    *Attorneys for the United States of America*
21

22

23

24

25

26

27

28

1

2

3   OF COUNSEL FOR THE UNITED STATES OF AMERICA:

4   MADELINE A. GALLO
    Assistant Regional Counsel
5   U.S. Environmental Protection Agency
6   Region IX
    75 Hawthorne Street
7   San Francisco, CA 94105

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

---

**Plaintiff(s): United States Department of Justice**

County of Residence: Outside the State of Arizona

County Where Claim For Relief Arose: Cochise

**Defendant(s): Apache Nitrogen Products, Inc.**

County of Residence: Cochise

Plaintiff's Atty(s):

**Deborah A. Gitin , Senior Counsel**
**U.S. Department of Justice**
**450 Golden Gate Ave, Suite 07-6714**
**San Francisco, California 94102**
**415-744-6488**

Defendant's Atty(s):

**Chris S. Leason**
**Gallagher & Kennedy**
**2575 East Camelback Road, Suite 1100**
**Phoenix, Arizona 85016**
**602-530-8000**

---

II. Basis of Jurisdiction:          **1. U.S. Government Plaintiff**

III. Citizenship of Principal
Parties (Diversity Cases Only)

Plaintiff:- **N/A**

Defendant:- **N/A**

IV. Origin :          **1. Original Proceeding**

V. Nature of Suit:          **893 Environmental Matters**

VI.Cause of Action:          violation of Sections 112(r)(1) and 112(r)(7) of the Clean Air Act, 42 U.S.C. § 7412(r)(1), (r)(7), Section 103 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9603, and Section 304 of the Emergency Planning and Community Right-to-Know Act 42 U.S.C. § 11004, and their implementing regulations, at the chemical manufacturing facility ANPI owns and operates in Cochise County, Arizona.

VII. Requested in Complaint

Class Action: **No**

Dollar Demand:

Jury Demand: **No**

VIII. This case **is not related** to another case.

**Signature:** <u>/s/ Deborah A. Gitin</u>

       **Date:** <u>October 28, 2020</u>

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

Revised: 01/2014